UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BOLOTBEK DZHENUTBAEV,                                                                    Petitioner,

v.                                                                     Civil Action No. 3:26-cv-44-DJH

JEFF TINDALL, Jailer, Oldham County
Detention Center, and
SAMUEL OLSON, Field Office Director,
Chicago Field Office, Immigration and
Customs Enforcement,                                                                Respondents.

\* \* \* \* \*

**MEMORANDUM AND ORDER**

Bolotbek Dzhenutbaev, a noncitizen resident of Illinois currently detained in the Western District of Kentucky, seeks a writ of habeas corpus pending removal proceedings. He alleges that his detention by immigration authorities violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. (Docket No. 1) The parties agreed to forgo a show-cause hearing given the absence of a material factual dispute (*see* D.N. 4), and they have submitted briefs setting out their respective legal arguments (D.N. 6; D.N. 8). After careful consideration, the Court will grant in part Dzhenutbaev's petition for the reasons explained below.

**I.**

Dzhenutbaev is a native and citizen of Kyrgyzstan. (D.N. 1, PageID.4 ¶ 17; D.N. 6-1, PageID.87) He entered the United States on December 16, 2024, and was paroled for one year pursuant to 8 U.S.C. § 1182(d)(5)(A) (D.N. 1, PageID.1 ¶ 2), which permits noncitizens stopped at the border to be released into the United States "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A). On the day he entered the United States, Dzhenutbaev was placed in removal proceedings via a Notice to Appear. (D.N. 6-1, PageID.87) The Notice charged

1

Dzhenutbaev as an "arriving alien" and inadmissible as "an immigrant . . . not in possession of a valid entry document." (*Id.*, PageID.87, 90) Dzhenutbaev is an asylum applicant and has a hearing scheduled on his asylum application before an immigration judge on February 23, 2026. (D.N. 1, PageID.1 ¶ 2) On May 26, 2025, Dzhenutbaev was arrested by local law enforcement in Illinois and charged with misdemeanor domestic battery causing bodily harm. (D.N. 6-2, PageID.93) On September 8, 2025, Dzhenutbaev was arrested by U.S. Immigration and Customs Enforcement (ICE) officials pursuant to an administrative arrest warrant (D.N. 6-3, PageID.96) "because [the misdemeanor] offense was potentially a violation of the Laken Riley Act." (D.N. 6, PageID.77; *see* D.N. 6-2, PageID.93 ("[D]ue to his criminal offense and having committed a crime in violation of the Laken Riley Act[,] . . . DZHENUTBAEV would be taken into immigration custody.")) He was to remain in ICE custody "until a determination [was] made on his case."[1] (D.N. 6-2, PageID.94) His parole was apparently revoked at that point.[2] (*See* D.N. 1, PageID.16 ¶¶ 57–58; D.N. 6, PageID.84–85) "It was later determined" that the misdemeanor offense "likely would not qualify for mandatory detention under the Laken Riley Act." (D.N. 6, PageID.77) Notwithstanding that determination, Dzhenutbaev remains detained at the Oldham County Detention Center. (D.N. 1, PageID.1 ¶ 1; D.N. 6, PageID.77)

Dzhenutbaev seeks a writ of habeas corpus against Oldham County Jailer Jeff Tindall and Chicago ICE Field Office Director Samuel Olson. (D.N. 1, PageID.3 ¶¶ 14–15) Dzhenutbaev alleges that the revocation of his parole and his detention without a bond hearing violate the Immigration and Nationality Act, 8 U.S.C. §§ 1182, 1225–1226, and due process under the Fifth Amendment. (*See id.*, PageID.12–17 ¶¶ 44–60) Dzhenutbaev asks the Court to order his

---

[1] The record does not reflect whether the misdemeanor offense has been resolved. (*See generally* D.N. 1; D.N. 6; D.N. 8)

[2] The parties acknowledge that Dzhenutbaev's parole was revoked. (*See* D.N. 1, PageID.16 ¶ 57; D.N. 6, PageID.85) No evidence of the revocation exists in the record, however.

2

immediate release and a bond hearing pursuant to 8 U.S.C. § 1226(a).  (*See id.*, PageID.17)  Respondents argue that (1) the Court lacks jurisdiction to hear the habeas petition under 8 U.S.C. § 1252(b)(9) in light of a recent decision by the Third Circuit Court of Appeals; (2) Dzhenutbaev is properly detained under § 1225(b)(2) as an "arriving alien" and an applicant for admission who is seeking admission; (3) Dzhenutbaev's parole "does not impact . . . whether he is lawfully detained" under § 1225 or § 1226; and (4) Dzhenutbaev's detention does not violate due process because he "was afforded all the process he was due" under § 1225.[3] (*See* D.N. 6, PageID.78–85; D.N. 6-4, PageID.132)

## II.

**A.     Jurisdiction**

Citing 8 U.S.C. § 1252(b)(9) and *Khalil v. President*, 164 F.4th 259 (3d Cir. 2026) (per curiam), Respondents contend that the Court lacks jurisdiction to hear Dzhenutbaev's claims. (*See* D.N. 6, PageID.78–81)  The Court recently rejected a similar argument in *Coronel-Hernandez v. Woosley*, No. 4:26-cv-20-DJH, 2026 WL 227011 (W.D. Ky. Jan. 28, 2026).  The Court thus summarizes and incorporates by reference its reasoning and determination from that decision.  There, the Court noted that § 1252(b)(9) applies only with respect to final orders of removal.  *See id.* at *2 (citing *Singh v. Lewis*, No. 4:25-cv-133-DJH, 2025 WL 3298080, at *4 (W.D. Ky. Nov. 26, 2025)).  The Court further observed that *Khalil* involved a petitioner "challenging his detention, removal, and 'a broad array of alleged governmental misconduct under the First and Fifth Amendments,' the Administrative Procedure Act, and Supreme Court precedent."  *Id.* (quoting *Khalil*, 164 F.4th at 276).  The Third Circuit determined that Khalil's "claims could be raised later in a petition for review of a final order of removal" and that § 1252(b)(9) thus stripped the district

---

[3] Respondents do not argue whether Dzhenutbaev must exhaust his administrative remedies. (D.N. 6-4, PageID.128 n.4)  Therefore, the Court will not address that issue.

court of jurisdiction over the petition. *Id.* (citing 164 F.4th at 276). This Court distinguished Coronel-Hernandez's claims from Khalil's, observing that "[u]nlike the petitioner in *Khalil*," *id.* at *3, Coronel-Hernandez was not challenging "whether removing [her] would be unlawful" but instead whether the respondents could detain her without a bond hearing. *Id.* (alteration in original) (quoting *Khalil*, 164 F.4th at 276). Likewise, Dzhenutbaev challenges his detention without a bond hearing, not whether he may lawfully be removed. (*See* D.N. 1, PageID.12 ¶ 45; *id.*, PageID.13 ¶ 54) Thus, § 1252(b)(9) does not prevent the Court from hearing his claims. *See Coronel-Hernandez*, 2026 WL 227011, at *3; *see also Kourouma v. Jamison*, No. 26-0182-KSM, 2026 WL 120208, at *3–4 (E.D. Pa. Jan. 15, 2026) (distinguishing *Khalil* from the petitioner's case challenging his detention without a bond hearing and finding that § 1252(b)(9) did not bar jurisdiction).

**B.     Immigration and Nationality Act**

Dzhenutbaev asserts that he "is not an arriving alien" and thus "is not properly detained" under 8 U.S.C. § 1225(b)(2). (D.N. 1, PageID.14 ¶ 55) Additionally, Dzhenutbaev contends that the revocation of his parole violated the Immigration and Nationality Act because "[t]here is no evidence . . . that the purpose of [his] parole ha[d] been accomplished" or that "a case-by-case determination regarding the revocation of [his] parole was made." (*Id.*, PageID.16 ¶ 57) Respondents argue that Dzhenutbaev is lawfully detained under § 1225(b)(2), incorporating by reference arguments from the appellants' brief in *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025), *appeal docketed*, No. 25-1965 (6th Cir. Oct. 27, 2025), and further asserting that he is an "arriving alien." (*See generally* D.N. 6-4) Respondents also argue that Dzhenutbaev's claim regarding the revocation of his parole "does not impact" whether he is lawfully detained

4

under § 1225(b)(2) or § 1226(a) but that his parole was properly revoked via the arrest warrant in any event. (*See* D.N. 6, PageID.83–85)

Respondents' contentions are undermined by the record in this case, which makes clear that Dzhenutbaev was not detained under § 1225(b)(2), but rather pursuant to the Laken Riley Act. In relevant part, the Laken Riley Act recently amended the Immigration and Nationality Act to require detention for noncitizens who are inadmissible under certain statutory provisions and who have been charged with, arrested for, or convicted of "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer . . . , or any crime that results in death or serious bodily injury to another person." § 1226(c)(1)(E)(ii). The narrative of Dzhenutbaev's arrest states: "Due to the Laken Riley Act[,] the subject was taken into ICE Custody and will remain in ICE custody until a determination is made on his case." (D.N. 6-2, PageID.94; *see also id.*, PageID.93 (stating that the deportation officer "explained to DZHENUTBAEV that due to his criminal offense and having committed a crime in violation of the Laken Riley Act that DZHENUTBAEV would be taken into immigration custody")) The administrative warrant authorizing Dzhenutbaev's arrest was issued under § 1226.[4] And even in this habeas proceeding, Respondents acknowledge that the basis for Dzhenutbaev's detention was "potential[] . . . violation of the Laken Riley Act." (D.N. 6, PageID.77) They likewise acknowledge that "[i]t was later determined, after further review of the criminal charging documents, because the crime which Petitioner allegedly committed did not involve 'serious bodily injury,' that the offense likely would not qualify for mandatory detention under the [Act]." (*Id.*) Nevertheless, Respondents assert that Dzhenutbaev "is detained under 1225(b)(2) as an arriving alien." (*Id.*)

---

[4] The warrant cited section 236 of the Immigration and Nationality Act (D.N. 6-3, PageID.96), which is codified at 8 U.S.C. § 1226. *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *1 n.1 (W.D. Ky. Sep. 19, 2025).

But "[a]n agency must defend its actions based on the reasons it gave when it acted." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020); *see Rueda Torres v. Francis*, No. 25 Civ. 8408 (DEH), 2025 WL 3168759, at *5 (S.D.N.Y. Nov. 13, 2025). Therefore, Respondents may not now claim that Dzhenutbaev is detained under § 1225(b)(2). He instead remains detained under § 1226(c), despite Respondents' apparent concession that that section is inapplicable (D.N. 6, PageID.77). *Cf. Rueda Torres*, 2025 WL 3168759, at *5 ("Nowhere in the record did Respondents assert that Petitioner was detained under Section 1226(c), nor do any documents indicate that her . . . arrest and detention by ICE were linked to her dropped charges . . . nearly eight months prior. 'The Court cannot credit Respondents' new position as to the basis for [Ms. Rueda Torres'] detention, which was adopted post hoc and raised for the first time in this litigation.'" (alteration in original) (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025))) (citing *Regents*, 591 U.S. at 21–22, 24).

**C.    Due Process**

Dzhenutbaev asserts that his detention violates due process under the Fifth Amendment. (*See* D.N. 1, PageID.12–13 ¶¶ 44–51) Respondents argue that "Section 1225(b)(2) does not afford Petitioner the ability to obtain release on bond, and so the Due Process Clause does not either." (D.N. 6-4, PageID.157) Because Dzhenutbaev is detained under § 1226, not § 1225, Respondents' argument as to the due process required by § 1225(b)(2) is irrelevant. *Singh*, 2025 WL 3298080, at *5.

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings. *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam)

6

(citation omitted). Because Dzhenutbaev is detained under § 1226(c), the Court considers what process is due under that provision.

"[T]he procedural protections in place for aliens detained under § 1226(c) are 'almost nonexistent,' as they provide no individualized review of the need for detention and no mechanism for the detainee's release." *M.T.B. v. Byers*, No. 2:24-028-DCR, 2024 WL 3881843, at *3 (E.D. Ky. Aug. 20, 2024) (quoting *Black v. Decker*, 103 F.4th 133, 152 (2d Cir. 2024)). "[T]he only procedural protection available appears to be the alien's ability to contest that he committed the crime that renders him subject to mandatory detention," commonly called a *Joseph* hearing. *Id.* (citing *Black*, 103 F.4th at 152); *see generally In re Joseph*, 22 I&N Dec. 799 (BIA 1999). "Under *Joseph*, such detainees are entitled to a hearing before an Immigration Judge . . . to determine 'whether the [Government] has properly included [them] within a category that is subject to mandatory detention' under § 1226(c)." *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 328 (3d Cir. 2021) (alterations in original) (quoting *In re Joseph*, 22 I&N Dec. at 805) (citing 8 C.F.R. § 1003.19(h)(2)(i)(D), (h)(2)(ii)). During a *Joseph* hearing, the government must show that there is "reason to believe" the noncitizen is properly detained under § 1226(c) "until the Immigration Judge resolves the merits of the removal case." *In re Joseph*, 22 I&N Dec. at 807. "If a detainee is found not to be 'properly included' within § 1226(c), [he] may then seek release on bond under 8 U.S.C. § 1226(a)." *Gayle*, 12 F.4th at 328 (quoting *In re Joseph*, 22 I&N Dec. at 806).

To evaluate a due-process claim, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *8 (W.D. Ky. Nov. 4, 2025) (citing *Barrera*, 2025 WL 2690565, at *6); *see*

7

*M.T.B.*, 2024 WL 3881843, at *3–4 (applying *Mathews* to § 1226(c) analysis); *Black*, 103 F.4th at 147–55 (same). Under that test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Barrera*, 2025 WL 2690565, at *6 (citing *Mathews*, 424 U.S. at 335).

The first factor strongly favors Dzhenutbaev because he has a "significant liberty interest . . . in being free from imprisonment." *Black*, 103 F.4th at 151 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Under the second factor, the risk of erroneously depriving Dzhenutbaev of his freedom is high because procedural protections under § 1226(c) are "almost nonexistent." *Id.* at 152; *see M.T.B.*, 2024 WL 3881843, at *3. And it is unclear from the record whether Dzhenutbaev received the only procedural protection available—a *Joseph* hearing. (*See* D.N. 6, PageID.77; D.N. 6-2, PageID.93–94) Assuming Dzhenutbaev did not receive a *Joseph* hearing, providing him one would be futile given Respondents' admission that it has already been "determined" that his "[charged] offense likely would not qualify for mandatory detention under" § 1226(c). (*See* D.N. 6, PageID.77) Thus, "[i]n the absence of any meaningful procedures" remaining here, *M.T.B.*, 2024 WL 3881843, at *3, "almost any additional procedural safeguards," in particular a bond hearing under § 1226(a), "would add value." *Black*, 103 F.4th at 153 (emphasis omitted). The second *Mathews* factor therefore weighs strongly in Dzhenutbaev's favor. *M.T.B.*, 2024 WL 3881843, at *3. As to the third *Mathews* factor, the United States has "two primary interests" in support of detention: "(1) ensuring the noncitizen's appearance at proceedings, and (2) protecting the community from noncitizens who have been involved in crimes that Congress has determined differentiate them from others" for purposes of § 1226(c). *Black*, 103 F.4th at 153.

But "providing an individualized bond hearing does not undermine these interests" because an immigration judge considers flight risk and danger at the bond hearing. *M.T.B.*, 2024 WL 3881843, at *4 (citing *Black*, 103 F.4th at 153–54). An individualized bond hearing under § 1226(a) also presents low administrative and fiscal burdens. *See Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *15 (E.D.N.Y. Oct. 6, 2025).

Thus, because all three *Mathews* factors weigh in Dzhenutbaev's favor, he was entitled to a bond hearing under § 1226(a).[5] His detention without a bond hearing therefore violates due process.[6] In accordance with its prior decisions, the Court will order that Dzhenutbaev be immediately released. *See Alonso*, 2025 WL 3083920, at *9; *Navarrete v. Noem*, No. 4:25-cv-157-DJH, 2025 WL 3298081, at *4 (W.D. Ky. Nov. 26, 2025); *Salinas v. Woosley*, No. 4:25-cv-121-DJH, 2025 WL 3243837, at *5 (W.D. Ky. Nov. 20, 2025); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention." (emphasis omitted)).

---

[5] At a bond hearing, "[w]here the government seeks to continue depriving a person of their liberty," the government bears the burden of proof to justify continued detention by clear and convincing evidence. *Black*, 103 F.4th at 155. "Otherwise, 'the risk of an erroneous deprivation' of a detainee's liberty interest would remain unacceptably high." *Id.* (quoting *Mathews*, 424 U.S. at 335); see *M.T.B.*, 2024 WL 3881843, at *5 ("Requiring detainees to prove that they are not a danger and are not a flight risk after the government has already 'enjoyed a presumption that detention is necessary . . . presents too great a risk of an erroneous deprivation of liberty.'" (omission in original) (emphasis removed) (quoting *Black*, 103 F.4th at 156)).

[6] In light of this conclusion, the Court need not address whether the revocation of Dzhenutbaev's parole violated the Immigration and Nationality Act.

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Dzhenutbaev's petition for a writ of habeas corpus (D.N. 1) is **GRANTED** in part. Respondents are **DIRECTED** to immediately provide Dzhenutbaev with a bond hearing before a neutral Immigration Judge in accordance with 8 U.S.C. § 1226(a). Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **February 19, 2026**.

(2) Upon receipt of the notice of compliance, this matter will be **CLOSED**.

February 17, 2026

David J. Hale, Chief Judge
United States District Court